IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMIE S.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 3373 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Jamie S.'s application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 20, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [dkt. 25, Def.'s Mot.] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by his first name and the first initial of his last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

**BACKGROUND**

I.  **Procedural History**

On August 8, 2017, Plaintiff filed a claim for DIB, alleging disability since August 1, 2017, due to spine disorders and carpal tunnel syndrome ("CTS"). [Dkt. 17-4, R. 280-81; R. 90-91.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 100, 112.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was initially held on October 16, 2018, and continued to February 28, 2019, in order to give additional time for Plaintiff to submit medical evidence. [R. 40-89.] Plaintiff personally appeared and was represented by counsel at both hearings and testified with the assistance of an interpreter at the second hearing. [R. 42, 45-68, 78.] Vocational expert ("VE") Cheryl R. Hoiseth also testified at the second hearing. [R. 69-74.] On April 17, 2019, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. [R. 21-33.] The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 1-3.]

II. **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 21-33.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 1, 2017. [R. 24.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: spine disorders and carpal tunnel syndrome. [R. 24.] The ALJ concluded at step three that his impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 24-25.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to

2

perform medium work with the following additional limitations: he can only occasionally climb ladders, ropes, or scaffolds; he can only occasionally stoop or crawl; he must avoid concentrated exposure to vibration; he can frequently use the lower left extremity for operating foot controls; he can frequently handle or finger bilaterally and reach overhead; he can be off task no more than 15% of a workday; he can understand English at least 30% of a workday; and he needs oral instructions. [R. 25-31.] At step four, the ALJ concluded that Plaintiff would not be able to perform his past relevant work. [R. 31-32.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act. [R. 32-33.]

## **DISCUSSION**

### I.     **Judicial Review**

Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at

either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits."

4

*Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).  The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review."  *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).  Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence.  *Elder*, 529 F.3d at 413.

## II. Analysis

Plaintiff argues that (1) the ALJ erred in crafting the RFC and at step 5 by failing to adequately support her findings, including by the ALJ affording great deference to only a selective review of a functional capacity evaluation ("FCE"), (2) the ALJ's determination that Plaintiff could communicate in English is flawed, and (3) the ALJ's subjective symptom assessment is not supported by substantial evidence.  [Dkt. 20, Pl.'s Mem. at 5-15; dkt. 28, Pl.'s Reply at 1-9.]  The Commissioner argues in opposition that the ALJ reasonably assessed Plaintiff's subjective statements and the opinion evidence, the ALJ reasonably determined that Plaintiff could communicate in English, and the VE's testimony at step 5 about jobs Plaintiff could perform was consistent with the Dictionary of Occupational Titles ("DOT").  [Dkt. 26, Def.'s Mem. at 2-16.]  After reviewing the record and the briefs submitted by the parties, the Court agrees with Plaintiff that the ALJ failed to adequately support her RFC finding with substantial evidence, including by selectively relying on the FCE.  Because this failure alone warrants remand, the Court does not reach Plaintiff's additional arguments.

In determining Plaintiff's RFC, the ALJ found that Plaintiff could perform medium work except that he can only occasionally climb ladders, ropes, or scaffolds; occasionally stoop or crawl; no more than frequently use the lower left extremity for operating foot controls; no more

5

than frequently handle or finger bilaterally and reach overhead; must avoid concentrated exposure to vibration; can be off task no more than 15% of a workday; can understand English at least 30% of a workday; and needs oral instructions. [R. 25.] Plaintiff argues—and the Court agrees—that the ALJ failed to build a "logical bridge" between the evidence and these RFC limitations. [Pl.'s Mem. at 5-9.] *Beardsley*, 758 F.3d at 837. Since the ALJ's analysis was deficient, the Court is unable to evaluate whether substantial evidence supports the ALJ's conclusions and ultimate RFC determination, and remand is thus warranted.

While evaluating Plaintiff's subjective symptoms, the ALJ gave a lengthy summary of the medical evidence in the record—which was voluminous, totaling over 1800 pages in this case, [*see* R. 444-2323]—and later briefly discussed her takeaways from that evidence, but did not explain how her conclusions were supported by the record or translated into the RFC. [*See* R. 26-31.] In her discussion, the ALJ first cited parts of two specific records without any analysis of them: the FCE's conclusion in September 2018 that Plaintiff could not perform his past relevant work at a heavy exertional level but could work at a medium exertional level, and the internal medicine consultative examination findings in November 2017 of no edema, non-antalgic gait, normal grip strength, normal ability to grasp and manipulate objects in both hands, normal range of motion in the cervical and lumbar spine, and ability to walk 50 feet without support. [R. 30; *see* R. 951-64 (FCE), 863-66 (consultative exam).] The ALJ then made several general observations about the treatment record:

> After having CTS and neck surgeries, physical therapy helped improve his symptoms. Physical exams did not consistently revealed [*sic*] deficits. He did not consistently report having symptoms to providers. Some imaging revealed only mild deficits. He refused treatment, including injections and physical therapy, suggesting that his symptoms were not as severe as alleged.

6

[R. 30.] Immediately after that discussion, in a new paragraph, the ALJ outlined the above RFC and explained as follows: "The exertional, postural, environmental, and off-task limitations accommodate his spine disorder issues and pain. The manipulative and off-task limitations accommodate his CTS issues and pain. The language limitation accommodates his limited abilities in understanding English. The record does not support further limitations." [R. 30-31.]

This discussion raises more questions than it answers about how the ALJ viewed the medical evidence in crafting the RFC here. The ALJ had an obligation to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7; *see also Mark J. v. Saul*, No. 18 C 8479, 2020 WL 374676, at *5 (N.D. Ill. Jan. 23, 2020) (ALJ must build a logical bridge between record and RFC assessment and merely summarizing medical evidence is not sufficient). The terse sentences following the RFC that broadly connect parts of the RFC to Plaintiff's spine disorder issues, CTS issues, and pain explain nothing about how severe those conditions are or *why* those limitations are appropriate to address the conditions. [*See* R. 31.] And the bare citations to the FCE and an internal medicine consultative examination, without any elucidation as to how they support the RFC, are similarly unhelpful and incomplete. [*See* R. 30.]

That leaves just the block-quoted five sentences above representing the ALJ's takeaways from the medical evidence, which have no citations to the medical records (or even to the ALJ's earlier summary of those records) and are vague. For example, the ALJ stated that "[p]hysical exams did not consistently reveal[] deficits" and that Plaintiff "did not consistently report symptoms to providers," but there are no specifics about *what* deficits the ALJ did not see in *which* physical exams, what is meant by "consistently," or to *which* "providers." [R. 30.]

7

Without any context or further detail, the Court is unable to review (1) whether these statements about the evidence are accurate or (2) how the ALJ used this evidence to inform her crafting of the RFC. Similarly, the ALJ concluded that "[s]ome imaging revealed only mild deficits." [R. 30.] Again, the Court is left to wonder what is meant by "some"—as it seems to imply also that at least *some other* imaging revealed more than mild deficits—and ultimately how the mild deficit findings factored into the ALJ's RFC. The remaining two sentences—explaining that Plaintiff's symptoms improved after CTS and neck surgeries with physical therapy and that Plaintiff refused injections and physical therapy—are at least more specific, but these statements are still not supported with citation to the record, and more importantly, remain untethered to the RFC.

Further, although the Court is unable to trace the ALJ's reasoning from the evidence to her conclusions here with any particularity, even a review of the ALJ's own summary of the medical evidence raises questions about her conclusions and whether she engaged in impermissible "cherry-pick[ing]" of the record to come up with those conclusions, as Plaintiff also asserts. [Pl.'s Mem. at 5-6.] *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("The ALJ must confront the evidence that does not support [her] conclusion and explain why that evidence was rejected."). For example, as to Plaintiff's purported refusal of injections and physical therapy, the ALJ noted earlier in her decision that Plaintiff participated in physical therapy for his back condition until November 2017 when he reported he stopped because his pain had decreased and that Plaintiff refused epidural injections due to possible complications (i.e., side effects) in June 2018. [R. 27-29.] But then the ALJ acknowledged that Plaintiff did later opt for transforaminal injections in January 2019 in order to treat his lumbar degenerative disk disease. [R. 30.] And, similarly, the ALJ noted that Plaintiff did engage in physical therapy

8

after November 2017: Plaintiff went to physical therapy for his CTS after his left carpal tunnel release surgery in February 2018, and Plaintiff was referred to physical therapy for his back in January 2019. [R. 28-30.] When it came to assessing Plaintiff's subjective symptoms and determining the RFC, the ALJ acknowledged none of this nuance, instead broadly concluding that Plaintiff's sometimes refusal of treatment was a reason his symptoms were not as severe as he alleged. [R. 31.]

The ALJ's conclusion that "[p]hysical exams did not consistently reveal[] deficits" also is puzzling in light of the evidence that the ALJ summarized. [R. 30.] Just to name a few of the deficiencies, there are numerous reports in the ALJ's own recitation of the medical evidence of Plaintiff having edemas, decreased strength in his extremities, positive left straight leg raise tests and Faber's tests, decreased range of motion in the spine, and gait issues. [*See* R. 26-30.] Ultimately, it appears that the record evidence is considerably more mixed than the ALJ's bare conclusions would suggest, and the ALJ erred in not explaining her reasoning in adopting her ultimate conclusions. *See Moore*, 743 F.3d at 1123; *Amanda M. v. Kijakazi*, No. 3:20-cv-50272, 2022 WL 1773780, at *3 (N.D. Ill. June 1, 2022).

Next, the ALJ turned to the opinion evidence after she laid out the RFC, but her evaluation of the medical opinions was also deficient. As Plaintiff's application for benefits was filed after March 17, 2017, the evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under § 404.1520c(a), the ALJ "will not defer or give any specific evidentiary weight, including controlling weight," to any medical opinion. Instead, the ALJ considers a variety of factors in assessing medical opinions, but the "most important factors"—and the only factors that the ALJ is required to discuss in her decision—are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). But the ALJ did not adequately address these factors with respect

9

to the state agency physicians' prior administrative medical findings or the examining source's FCE.

As to the prior administrative medical findings, state agency physicians concluded initially and upon reconsideration in December 2017 and March 2018, respectively, that Plaintiff could perform light work with the following additional limitations: he had unlimited ability to balance, kneel, crouch, and manipulate objects; he could only frequently climb ladders, ropes, and scaffolds; he could only occasionally stoop or crawl; and he had to avoid concentrated exposure to vibration. [R. 95-97, 107-09.] The ALJ acknowledged that the state agency medical consultants opined that Plaintiff "should be limited to light work with postural and environmental limitations to account for his back, neck, and CTS symptoms," but the ALJ never identified what those postural and environmental limitations were in her decision. [R. 31.] The ALJ found the state agency medical opinions "persuasive to the extent that postural and environmental limitations are justified to accommodate his spine disorders and CTS, but they are inconsistent with [Plaintiff's] improvement after his surgeries, including his reports to providers, deficits noted during physical exams, and [Plaintiff's] refusal of treatment." [*Id.*] Here, the ALJ did indeed impose some—but not all—of the postural and environmental limitations that the state agency physicians thought were warranted, but it is not clear (because of her lack of specificity) whether she did this because she was adopting those doctors' opinions or not (or at least adopting them in part, i.e., the portions that limited Plaintiff to occasional stooping or crawling and avoiding concentrated exposure to vibration). [*See* R. 31, 95-97, 107-09.] And the ALJ found Plaintiff less limited overall than the stage agency physicians had, concluding that he could perform medium work rather than light work. [R. 31.] The ALJ's perfunctory and unclear attempts to consider the supportability and consistency of the state agency physicians' opinions,

10

by simply citing unspecified reports to providers, physical exam findings, and refusal of treatment without detail, are plainly inadequate because the ALJ gives no indication as to what portions of the record on which she was relying and thus gives the Court no ability to trace her actual reasoning. [*See* R. 31.] To the extent that the ALJ is citing those reasons with reference to her earlier conclusions about the record, as just discussed above, those conclusions are similarly unexplained and deficient. [*See* R. 30.]

Turning to the FCE, the ALJ focused only on the evaluation's conclusions about what Plaintiff could lift and carry, finding them "generally persuasive." [R. 31.] The ALJ concluded that the FCE opinion showed that although Plaintiff could not return to his previous work, "his treatment and reports of improvement to providers shows that he was capable of working." [*Id.*] Further, as to the lifting and carrying specifically, the ALJ determined that "the record demonstrates that [Plaintiff] is capable of lifting and carrying more weight than [the opinion provided] based on [Plaintiff's] lack of consistent reports of symptoms to providers and consistent deficits demonstrated during exams and imaging." [*Id.*] Thus, the ALJ explained, the FCE opinion is "consistent with [Plaintiff] experiencing improvement with surgery and physical therapy, but the record shows that [Plaintiff] is capable of slightly more than what [the FCE opinion determined]." [*Id.*] Once again, the ALJ's discussion does not address the consistency and supportability of the FCE's opinion with any specificity, and the ALJ relies on the same underdeveloped reasoning as before to find that Plaintiff can do "slightly more" than the opinion includes. [*Id.*] This is another error.

Moreover, Plaintiff is correct that the ALJ failed to address any limitations that the FCE opined were necessary beyond lifting and carrying restrictions. [Pl.'s Mem. at 6; Pl.'s Reply at 6-7.] In particular, the ALJ did not discuss whether she found the FCE's postural limitations

11

warranted: that Plaintiff can occasionally reach forward sustained, must avoid reaching overhead sustained, avoid bending, occasionally repetitive squat and avoid sustained squatting, occasionally kneel, avoid crawling, occasionally climb stairs, occasionally climb ladders, occasionally walk, avoid bilateral grasp occasionally, and occasionally grip. [R. 952-53.] Again, as with the state agency physicians' opinions, the ALJ included some of these limitations in the ultimate RFC (e.g., Plaintiff can occasionally climb stairs and ladders) but also left out several (e.g., Plaintiff should avoid crawling or bending and only occasionally grip objects). [*See* R. 30-31.] Without any explanation given, the Court cannot evaluate what role this significant portion of the FCE played in the ALJ's RFC determination of Plaintiff's postural limitations.

    Last, as Plaintiff points out and the Commissioner admits, [Pl.'s Mem. at 5-6; Def.'s Mem. at 9], the ALJ misidentified the medical professional who performed the FCE as Dr. John Song, M.D., instead of physical therapist Christina Smith. This would be a relatively trivial mistake had the ALJ given other well-supported reasons for partially adopting the FCE by finding Plaintiff "capable of slightly more than [ ] opined," [R. 31], but here the misidentification casts further doubt as to whether the ALJ adequately considered the FCE.[3]

---

[3] Plaintiff argues in her opening brief that because the FCE was completed by a physical therapist, it should not even be considered opinion evidence, citing to the former regulations concerning opinion evidence, which required that opinions be from "acceptable medical sources." *See* 20 C.F.R. § 404.1527(f). [Pl.'s Mem. at 5-6.] In her reply, Plaintiff presses that same argument now under the current regulations. [Pl.'s Reply at 6.] The Court, however, notes that the regulations in effect now no longer refer to "acceptable medical sources" but rather simply "medical sources," which has a broader definition under which a physical therapist would seem to qualify because he or she is licensed by a State. 20 C.F.R. § 404.1520c; *see* 20 C.F.R. § 404.1502(d) ("Medical source means an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law. . ."). Regardless, this issue can be addressed and litigated if/as appropriate on remand.

Overall, the ALJ's decision lacks sufficient analysis for the Court to determine how the ALJ credited the medical opinions and, in general, what led the ALJ to impose the particular RFC limitations. It is the ALJ's responsibility to adequately explain her reasoning in order for the Court to be able to review whether the decision is supported by substantial evidence. *See Scrogham*, 765 F.3d at 695. Because the ALJ did not fulfill that obligation here, the Court must remand the case for further consideration. *See, e.g., Darlene M. v. Kijakazi*, No. 19 CV 6389, 2021 WL 3773291, at *6 (N.D. Ill. Aug. 25, 2021).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 20] is granted, and the Commissioner's motion for summary judgment [dkt. 25] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 9/12/2022

_____
BETH W. JANTZ
United States Magistrate Judge